|  |  |
|---|---|
| A.J.B., | Case No. 5:17-cv-00992-SHK |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Plaintiff A.J.B.[1] ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying his application for disability insurance benefits ("DIB"), under Title II of the Social Security Act (the "Act"). This Court has jurisdiction, under 42 U.S.C. § 405(g), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

---

[1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with respect to Plaintiff's medical records discussed in this Opinion and Order.

## I. BACKGROUND

Plaintiff filed an application for DIB on November 13, 2013, alleging disability beginning on April 28, 2013. Transcript ("Tr.") 164-65.[2] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on March 16, 2016, ALJ Laura Fernandez determined that Plaintiff was not disabled. Tr. 33-46. Plaintiff sought review of the ALJ's decision with the Appeals Council, however, review was denied on March 22, 2017. Tr. 1-5. This appeal followed.

## II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196)); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing." (citation omitted)). A reviewing

---

[2] A certified copy of the Administrative Record was filed on October 10, 2017. Electronic Case Filing Numbers ("ECF Nos.") 17-18. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

2

court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

## III. DISCUSSION

### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

>   (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
>   (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps

one through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [DIB]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

> Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [DIB]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2 [("the Listings")]. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB]. See id.

Id. at 1098-99.

### B. Summary Of ALJ's Findings

The ALJ determined that "[Plaintiff] meets the insured status requirements of the . . . Act through September 30, 2017." Tr. 38. The ALJ then found at step one, that "[Plaintiff] has not engaged in [SGA] since April 28, 2013, the alleged onset date (20 C.F.R. 404.1571 et seq.)." Id. At step two, the ALJ found that "[Plaintiff] has the following severe impairment: diabetes mellitus (20 CFR 404.1520(c))." Id. The ALJ observed that Plaintiff "has been treated for affective disorder, [gastroesophageal reflux disease ("GERD")], hypertension, obesity, and vertigo" but that these conditions were nonsevere because "these conditions were being managed medically, and should be amenable to proper control by adherence to recommended medical management and medication compliance" and because "no aggressive treatment was recommended or anticipated for these conditions." Id. The ALJ also observed that Plaintiff was treated for depression, but found that

5

Plaintiff's depression was nonsevere because Plaintiff "was treated for depression with medication only and did not attend any therapy or counseling." Id.

At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in [the Listings]." Tr. 39. In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) specifically as follows: [Plaintiff] can lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; [Plaintiff] can stand and/or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday; [Plaintiff] can perform postural activity frequently; [Plaintiff] can reach in all directions frequently and [Plaintiff] can frequently handle and finger bilaterally.

Id.

At step four, the ALJ found that "[Plaintiff] is capable of performing past relevant work [("PRW")] as a registered nurse[,]" a "medium, skilled" occupation, because "[t]his work does not require the performance of work-related activities precluded by [Plaintiff's RFC] (20 CFR 404.1565)." Tr. 41. The ALJ, therefore, concluded at step four that "[Plaintiff] has not been under a disability, as defined in the . . . Act, from April 28, 2013, through the date of th[e] decision (20 CFR 404.1520(f))." Tr. 42. The ALJ did not make a step five determination of whether Plaintiff could perform any other work that exists in significant numbers in the national economy.

### C. **Summary Of Plaintiff's Arguments**

In this appeal, Plaintiff raises two issues, including whether the ALJ erred by: (1) failing to properly consider "relevant medical evidence of record in assessing Plaintiff's [RFC] and concluding at step number four that Plaintiff is capable of performing past relevant work"; and (2) failing to properly consider "Plaintiff's

6

subjective statements of record and testimony under oath in assessing Plaintiff's [RFC]." ECF No. 24, Joint Stipulation at 3-4.

### D. Court's Consideration Of Plaintiff's First Argument

#### 1. Plaintiff's Challenge To ALJ's RFC Assessment

Plaintiff argues that the ALJ's RFC assessment is not supported by the record because: (1) "the ALJ's conclusion that Plaintiff is capable of performing medium work activity is not supported by substantial evidence"; and (2) the RFC does not account for the limitations caused by Plaintiff's depression. Id. at 4-6 (internal citation omitted).

With respect to the ALJ's RFC finding that Plaintiff could perform work at the medium exertional level, Plaintiff asserts that the ALJ cited no evidence to support this finding and, instead, stated only that "'the [RFC] assessment by this decision is supported by the evidence as a whole.'" Id. at 7. Plaintiff argues that this reasoning fails because the medical evidence that the ALJ ignored does not support the RFC finding for medium work. Id. Plaintiff further argues that it would be "impossible . . . to lift and/or carry 50 pounds up to one-third of the work day and 25 pounds two-thirds of the work day as would be required by his [PRW] as a registered nurse, a medium occupation" because of "his severe upper extremity impairments including both carpel tunnel syndrome and diabetic neuropathy." Id.

Plaintiff supports his contention that he cannot perform medium work by pointing to medical records dated July 8, 2014, where his treating doctor, Agnes Quion, M.D., noted that she intended to complete an Employment Development Department ("EDD") form to "extend" Plaintiff's leave from work from July 16, 2014, through October 16, 2014, as a result of Plaintiff's carpel tunnel syndrome. Id. at 8 (citing Tr. 339) (emphasis added). Plaintiff argues that Dr. Quion's opinion that Plaintiff could not work during the relevant time period directly contradicts the ALJ's finding that Plaintiff had the RFC to return to his PRW at the medium

7

exertional level, and that the ALJ's failure to comment on Dr. Quion's opinion "constitutes reversible error." Id.

With respect to Plaintiff's depression, Plaintiff argues that the ALJ erred in finding that his depression was nonsevere because Plaintiff's depression causes "more than minimal impact" on his ability to perform his PRW because it causes "difficulties concentrating to perform tasks involving patient care." Id. at 5-6. In support of his contention that depression is a severe impairment, Plaintiff points to multiple diagnoses and prescriptions for depression that he received throughout the medical record, including prescriptions and diagnoses from March 20, 2014; July 8, 2014; October 16, 2014; January 15, 2015; February 17, 2015; April 27, 2015; December 7, 2015; and December 30, 2015. Id. (citing Tr. 336-39, 342, 344, 349, 365, 374).

## 2. Defendant's Response

Defendant responds by arguing that Plaintiff's challenges to the ALJ's RFC assessment fails because substantial evidence supports the ALJ's RFC and "Plaintiff identifies no evidence that shows he was mentally or physically more functionally limited than the ALJ determined." Id. at 9, 12 (citation omitted).

With respect to Plaintiff's ability to perform medium work specifically, Defendant argues that "[t]he ALJ pointed out that Plaintiff's 'medical records show a limited treatment history with only mild objective findings'" and the ALJ "acknowledged that both State agency physicians who reviewed Plaintiff's record found his physical impairments nonsevere." Id. at 13 (quoting Tr. 40); (citing Tr. 90-91, 99-100). Further, Defendant argues that Plaintiff's impairments are nonsevere because—as the ALJ observed—Plaintiff "engaged in many daily activities, including regular exercise, preparing meals and performing household chores, and driving." Id. (citing Tr. 40, 199-201). Finally, Defendant argues that the ALJ did not err by not discussing Dr. Quion's statement that "suggests" that Plaintiff was incapable of performing his PRW "for a period of three months, due

8

to carpel tunnel syndrome[,]" because the ALJ pointed to objective studies demonstrating that Plaintiff's carpel tunnel syndrome was "very mild." Id. at 14-15 (internal quotation marks omitted).

With respect to Plaintiff's depression, Defendant argues that "the only doctors who offered opinions about Plaintiff's mental limitations, State agency physicians Sonya Adamo, Psy.D., and Barry Rudnick, M.D., both found that his depression did not constitute a medically determinable mental impairment due to lack of treatment." Id. at 12 (citing Tr. 91-92, 100-01).

### 3. ALJ's Contested Findings

The ALJ noted that "the [RFC] assessment by this decision is supported by the evidence as a whole." Tr. 41. The ALJ, however, did not tie this finding to any specific evidence, but nevertheless made three peripheral findings throughout the decision that are relevant to Plaintiff's RFC. First, the ALJ found that Plaintiff's subjective symptom statements were not credible, in part, because the symptoms and limitations Plaintiff alleged were "greater than expected in light of . . . [the] routine conservative treatment" Plaintiff received for these conditions. Tr. 40. Second, the ALJ found that Plaintiff's statements were not credible, in part, because "[Plaintiff] admitted to [ADLs] including driving, performing household chores and social activities[,]" that required "[s]ome of the physical and mental abilities[3] and social interactions . . . necessary for obtaining and maintaining employment." Tr. 40. Finally, the ALJ observed that "[a] progress note in June 2015 indicated that [Plaintiff] had no complaints . . . [and Plaintiff] reported no depressive symptoms." Id. (citing Tr. 351-62).

///
///

---

[3] Depression was the only mental issue asserted by Plaintiff and discussed in the ALJ's decision. Therefore, although the ALJ did not identify which mental ability she was referring to in this particular analysis, the Court infers that the ALJ was considering the effects of Plaintiff's depression.

9

With respect to Plaintiff's depression, as discussed above, the ALJ found that Plaintiff's depression was nonsevere because it was treatable "with medication only" and because Plaintiff "did not attend any therapy or counseling." Tr. 38.

### 4. Standard To Review ALJ's RFC Determination And Consideration Of Medical Evidence

The RFC is the maximum a claimant can do despite her limitations. 20 C.F.R. § 404.1545. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate all of the relevant medical and other evidence, including the claimant's testimony. SSR 96-8p, available at 1996 WL 374184. The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the Vocational Expert. Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

There are three types of medical opinions in Social Security cases: those from treating physicians, examining physicians, and non-examining physicians. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).

"'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" Id. (quoting Ryan v. Comm'r Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir. 2008)). "'If a treating or examining doctor's opinion is contradicted by

10

another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" Trevizo, 871 F.3d at 675 (quoting Ryan, 528 F.3d at 1198). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007)). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating h[er] interpretation thereof, and making findings.'" Trevizo, 871 F.3d at 675 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

### 5. **ALJ's Decision Not Supported By Substantial Evidence**

Here, the ALJ's RFC does not encompass all the limitations contained in the medical evidence and, therefore, is not supported by substantial evidence. With respect to Plaintiff's physical capabilities, the ALJ failed to consider and discuss evidence material to Plaintiff's ability to perform work at the medium exertional level. Specifically, the ALJ failed to consider and discuss the opinion of Plaintiff's treating doctor, who indicated that Plaintiff was unable to work as a result of Plaintiff's carpel tunnel syndrome during the relevant time period. Specifically, as discussed above, Dr. Quion opined in July 2014—fifteen months after Plaintiff's alleged disability onset date of April 28, 2013—that Plaintiff's carpel tunnel syndrome would continue to prevent Plaintiff from working until October 16, 2014. Tr. 164-65, 339.

Although it is unclear from the record how long Dr. Quion had opined that Plaintiff's carpel tunnel syndrome would prevent Plaintiff from working before Dr. Quion extended Plaintiff's leave from work in July 2014, this evidence demonstrates that Plaintiff's treating doctor found Plaintiff unable to work for a substantial amount of time during the relevant time period. This evidence also

11

directly contradicts the ALJ's finding that Plaintiff was able to perform his PRW during that same time period. The ALJ's failure to provide any reasons, much less specific and legitimate reasons supported by substantial evidence for ignoring Dr. Quion's opinion, constitutes reversible error. Trevizo, 871 F.3d at 675 (quoting Ryan, 528 F.3d at 1198).

The ALJ also failed to consider or discuss the extensive physical therapy Plaintiff received to treat his shoulder and hand issues. Specifically, Plaintiff testified at the administrative hearing that he had stopped working in 2013, collected state disability for one year,[4] attended eighteen physical therapy sessions to treat a decreased range of motion in his shoulders, and was eventually prescribed Gabapentin to treat pain, numbness, and tingling in his shoulders, hands, and fingers. Tr. 55-56. Plaintiff testified that the Gabapentin helped with the pain, but did not alleviate the numbness or tingling he experienced. Tr. 58. Moreover, Plaintiff added that these symptoms were made worse when he used his hands. Id. The ALJ's omission of this evidence from her analysis is material, because it demonstrates that Plaintiff aggressively pursued treatment for these conditions, whereas the ALJ found that Plaintiff's medical records show a limited treatment history and only mild objective findings. As such, the Court finds that the ALJ's RFC does not encompass all the limitations contained in the medical evidence for this additional reason.

Accordingly, because the ALJ's RFC does not encompass all the limitations contained in the medical evidence, the Court remands this matter back to the Commissioner to, first, determine Plaintiff's RFC to perform work at the medium

---

[4] The Court acknowledges that a state disability determination is not binding on the Agency. See 20 C.F.R. § 404.1504 ("Other governmental agencies . . . make disability[,] . . . workers' compensation, and other benefits decisions for their own programs using their own rules." However, "[b]ecause a decision by any other . . . agency . . . about whether you are disabled . . . is based on its rules, it is not binding on [the Commissioner] and is not [the Commissioner's] decision about whether you are disabled . . . under [the Commissioner's] rules.").

12

exertional level and, second, determine whether Plaintiff can perform his PRW at step four, or any other work that exists in the national economy in significant numbers at step five.  Because the Court remands the case back to the Commissioner on the aforementioned issue, the Court does not address Plaintiff's remaining assignments of error.

### IV.     CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  See Garrison, 759 F.3d at 1009 (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." (citation and internal quotation marks omitted)).

IT IS SO ORDERED.

DATED: 8/10/2018

_____
HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge